**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN DAUBERT,

      Plaintiff,

         v.

NRA GROUP, LLC,

      Defendant.

CIVIL ACTION NO. 3:15-CV-00718

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are two motions to reconsider (Docs. 51 & 53) my May 27, 2016 Memorandum and Order (Docs. 46 & 47) granting in part and denying in part Plaintiff's Motion for Partial Summary Judgment (Doc. 24). Because neither party has demonstrated a change in controlling law, new evidence that was previously unavailable, a clear error of law or fact, or a manifest injustice, both motions will be denied.

### I. Background

As the relevant facts are set forth in my May 27, 2016 Memorandum, a detailed factual and procedural history is unnecessary. *See Daubert v. NRA Grp., LLC*, No. 3:15-cv-718, 2016 WL 3027826, at *1-*2 (M.D. Pa. May 27, 2016). However, for the purpose of resolving the instant motions, I will briefly recite the following facts:

On November 8, 2013, Plaintiff John Daubert received medical services from Radiology Associates of Wyoming Valley ("Radiology Associates") as part of his treatment at the Wilkes-Barre General Hospital (the "Hospital"). A few days later, Plaintiff's radiology report, which included Plaintiff's phone number, was forwarded to MBMS for coding and billing purposes. MBMS provides billing services to Radiology Associates and collects unpaid medical bills on their behalf. After Plaintiff's health insurance company paid Twenty-One Dollars ($21.00) for services Plaintiff received from Radiology Associates, MBMS billed Plaintiff for the remaining balance of Twenty-Five Dollars ($25.00) and subsequently sent a reminder statement to Plaintiff on January 11, 2014. After Plaintiff failed to pay this outstanding balance, his account was transferred

to Defendant NRA Group, LLC, for collection purposes.  As part of its collection efforts, Defendant placed sixty-nine (69) phone calls to Plaintiff's cellular telephone number, only one of which was answered by Plaintiff.  Plaintiff never directly gave Defendant his telephone number, nor did he directly provide Defendant consent to receive such calls. All calls were made with Defendant's Mercury Predictive Dialer (the "Dialer").

In addition to these calls, Defendant's independent letter vendor, Renkim Corporation, mailed Plaintiff a collection letter displaying a barcode (the "Barcode"), which if scanned, would reveal Plaintiff's account number.  However, to the naked eye, the Barcode contains no words or phrases, and is nothing more than an irregular pattern of black and white markings that does not reveal any information.

In the instant action, Plaintiff has asserted claims against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") arising out of Defendant's phone calls and collection letter to Plaintiff displaying the above-referenced Barcode.  On December 2, 2015, Plaintiff moved for partial summary judgment as to liability on both his FDCPA and TCPA claims.  (Doc. 24.)  In opposing summary judgment, Defendant relied on the bona fide error affirmative defense in response to Plaintiff's FDCPA claim and on the prior express consent affirmative defense in response to Plaintiff's TCPA claim.

On May 27, 2016, I issued a Memorandum and Order granting Plaintiff's motion for summary judgment as to Defendant's liability relating to Plaintiff's TCPA claim, finding that there was no genuine issue of material fact as to whether Defendant was entitled to proceed to trial on its affirmative defense of prior express consent.  (Docs. 46 & 47.)  However, I denied Plaintiff's motion with regard to the FDCPA claim because there were genuine issues of material fact as to whether Defendant was entitled to a bona fide error defense.  (*Id.*)  Both parties subsequently moved for reconsideration. (Docs. 51 & 53.)

2

## II. Legal Standard

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration may be granted if the movant establishes: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court decided the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café, by Lou–Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

"A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). Reconsideration motions also may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment. *Hill v. Tammac Corp.*, Civ. A. No. 05–1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly, reconsideration is an extraordinary remedy, and should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

## III. Discussion

On June 9, 2016, Plaintiff filed a motion for reconsideration of my Order denying summary judgment on his FDCPA claim, arguing that my finding that Defendant could be entitled to a bona fide error defense was a clear error of law. (Doc. 51.) On June 11, 2016, Defendant filed a motion for reconsideration of my Order granting summary judgment on Plaintiff's TCPA claim, arguing that I committed a clear error of law by (1) misapplying the summary judgment standard and (2) refusing to consider portions of an affidavit submitted by Charlene Sarver (the "Sarver Affidavit") that directly contradicted Defendant's Rule 30(b)(6) testimony. (Doc. 53.) Both motions have been fully briefed and are now ripe for disposition.

3

A.      **Plaintiff's Motion for Reconsideration (Doc. 51)**

Before addressing the merits of Plaintiff's motion, it is worth taking some time to address the unique procedural background of Plaintiff's motion.  On December 2, 2015, Plaintiff filed a Motion for Partial Summary Judgment as to Liability on both his FDCPA and TCPA claims.  (Doc. 24.)  On January 7, 2016, Defendant filed its opposition to the motion (Doc. 32) and on February 4, 2016, Plaintiff filed his reply (Doc. 37).  On March 8, 2016, this case was scheduled to proceed to trial in July of 2016.  (Doc. 38.)

On April 4, 2016, after Plaintiff had already filed his reply brief, the parties submitted a Stipulation permitting Defendant to file an Amended Answer asserting a new bona fide error defense to Plaintiff's FDCPA claim as well as a sur-reply to argue the applicability of this new defense.  (Doc. 39.)  Plaintiff consented to these filings, provided that (1) the Amended Answer would not be deemed to moot Plaintiff's Motion for Partial Summary Judgment; (2) Plaintiff would be given an opportunity to investigate the factual allegations raised in the new affirmative defense; and (3) Plaintiff would be permitted to file a brief responding to Defendant's sur-reply within fourteen (14) days after Plaintiff received the certified transcript of a deposition of Defendant's designee.  (*Id.*)  On April 5, 2016, I entered an Order approving of the parties' stipulation.  (Doc. 40.)  The next day, the parties submitted another Stipulation permitting Plaintiff to conduct the Defendant's designee's deposition on any day in May of 2016 (Doc. 41), which I again approved (Doc. 45).

On April 6, 2016, Defendant filed both a sur-reply (Doc. 42) and an Amended Answer (Doc. 44), both of which asserted its new bona fide error defense.  On May 4, 2016, Plaintiff conducted a deposition of Defendant's designee.  However, during this deposition, Defendant apparently agreed to later provide a supplemental disclosure of documents that were discussed during the deposition.  (Doc. 52, at 3.)  Plaintiff reserved the right to seek to reconvene the deposition after receiving this supplemental information.  (Doc. 52, at 3-4.)  As of May 27, 2016, Plaintiff had not yet received the certified copy of the transcript because the deposition had not officially concluded, and

4

therefore the deadline to respond to Defendant's sur-reply had not yet passed.  Plaintiff notes that he had intended to file a status report to notify me of the above information and to advise that he would be filing a brief responding to the sur-reply. (Doc. 52, at 4 n.2.)  However, almost two (2) months had passed and Plaintiff never made any such filing and neither party ever brought any of the above information to my attention to suggest that Plaintiff's motion was not fully briefed or that a response to Defendant's sur-reply was forthcoming.

Therefore, on May 27, 2016, I issued a ruling on the pending summary judgment motion so that the parties would have adequate time to prepare for the upcoming trial, which was scheduled for July of 2016.  Specifically, I granted Plaintiff's motion with respect to his TCPA claim, but denied his motion with respect to his FDCPA claim. Although there was no genuine issue of material fact as to whether Defendant violated the FDCPA, summary judgment was denied on the basis of Defendant's bona fide error defense, which Plaintiff had failed to respond to or otherwise dispute.

On June 9, 2016, Plaintiff filed the instant Motion for Reconsideration of my denial of summary judgment on his FDCPA claim to advise me of the above information, noting that he had not yet received the certified transcript of Defendant's deposition regarding the bona fide error defense and that the deadline for filing his response to Defendant's sur-reply therefore had not yet passed.[1]  (Docs. 51 & 52.)  Plaintiff's motion also sets forth his arguments in response to Defendant's bona fide error defense.  This is the first time in which Plaintiff has made any response to this defense.  Now that Plaintiff has had an opportunity to fully brief the issue and respond to Defendant's arguments, I will again address this defense.  Upon review of Plaintiff's arguments, however, his motion

---

[1]     Although the deadline for Plaintiff to file his response to Defendant's sur-reply had therefore not yet passed, Plaintiff acknowledges that courts are permitted to decide a motion at any time, including before the conclusion of the briefing schedule. *See generally* Local Rule 7.6 ("Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition.").

for reconsideration will be denied.

To invoke a bona fide error defense under the FDCPA, Defendant must show that (1) the alleged violation was unintentional; (2) the alleged violation resulted from a bona fide error; and (3) the bona fide error occurred despite procedures designed to avoid such errors. *Beck v. Maximus, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006). Here, Defendant argued that when its independent letter vendor mailed Plaintiff's collection letter containing the Barcode, every court that addressed the issue–including two (2) district courts in Pennsylvania–had found that the presence of a barcode on the outside of a collection notice did not violate the FDCPA. Defendant argued that even though the Third Circuit later overruled these cases and held that the presence of a barcode ***did*** violate the FDCPA, this decision came after Defendant mailed Plaintiff's collection letter, and that in mailing the letter, Defendant had relied in good faith on the previous cases approving of the practice. Defendant also submitted an affidavit from its Director of Legal and Compliance to explain that Defendant had adopted procedures to ensure that it was in compliance with the most up-to-date case law.

In his motion for reconsideration, Plaintiff does not challenge that Defendant had proper procedures in place to satisfy the bona fide error defense. Rather, Plaintiff argues that a bona fide error defense cannot be premised on a mistake of law regarding the FDCPA's requirements. Plaintiff relies on the Supreme Court's decision in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), which held that "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the FDCPA." *Id.* at 604-05. The parties' dispute over the applicability of the bona fide error defense boils down to competing interpretations of the Supreme Court's articulation of this defense in *Jerman*, and whether *Jerman* addresses situations like here, where the debt collector relied on ***federal courts'*** misinterpretation of the FDCPA, as opposed to the debt collector's own misinterpretation. Because there is no binding Third Circuit precedent on this issue, I have looked to courts outside of this Circuit to inform my analysis.

6

Plaintiff argues that *Jerman* applies to **all** mistakes of law regarding the FDCPA, regardless of whether those mistakes are made by the debt collector or a federal district court, and therefore precludes a debt collector who relies on district court cases that are later overturned from asserting the bona fide error defense.  In support of this interpretation, Plaintiff relies on a federal district court case from Illinois, *Portalatin v. Blatt*, 125 F. Supp. 3d 810 (N.D. Ill. 2015), which held that the bona fide error defense did not apply where the debt collector, in violating the FDCPA, had relied on binding legal authority at the time that was later reversed.  The district court in *Portalatin* found that "*Jerman* does not distinguish between debt collectors who exercise independent legal judgment and those who do not." *Id.* at 815.  However, Plaintiff's reliance on *Portalatin* is misguided for a number of reasons.

First, *Portalatin* is not binding authority, and therefore does not warrant reconsideration of my prior Memorandum.  Second, the reasoning in *Portalatin* was seriously called into doubt, if not entirely overturned, by the Seventh Circuit's recent opinion in *Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 15-2516, 2016 WL 3262370 (7th Cir. June 14, 2016).[2]

In *Oliva*, the Seventh Circuit held that a law firm, which based its decision on where to bring a collection action against a consumer on a court's FDCPA interpretation that later was overturned, was **not** liable for suing a consumer in the wrong court.  Judge Daniel A. Manion, writing for a unanimous appellate panel, concluded that the debt collector was covered by the FDCPA's bona fide error defense.  To provide some background of this decision, the FDCPA restricts where a debt collector can file a collection suit to either the judicial district or similar legal entity where the consumer lives when the suit is filed or where the consumer signed the contract that is the basis of the suit.  15 U.S.C. § 1692i(a)(2).  In 1996, the Seventh Circuit decided in *Newsom v.*

---

[2]    *Oliva* was decided on June 14, 2016, which was approximately three (3) weeks after my prior Memorandum was decided, on May 27, 2016.

*Friedman*, 76 F.3d 813 (7th Cir. 1996) that all of Cook County, Illinois comprised a single judicial district, meaning that a consumer living anywhere in the county could be sued in any of the county's six (6) municipal districts.  However, that interpretation was overruled by the appellate court in 2014 in *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014).  In *Suesz*, the Seventh Circuit held that the judicial district or similar legal entity meant the smallest geographic area that could be used to fix venue in the relevant court system.  In Cook County, that meant a consumer now had to be sued in the municipal district where he lived.  *Suesz* also explicitly said that the change in interpretation was retroactive.

The law firm filed a collection suit against Ronald Oliva before *Suesz* was decided.  However, after *Suesz* was decided, the lawsuit was still pending.  The consumer sued, claiming that the collection suit had been filed in a location banned by the FDCPA.  There was no dispute that the law firm's choice of municipal district was permitted before *Suesz* and banned after *Suesz*.  There was also no question that the firm's error was unintentional and that it occurred despite the firm's procedures that were reasonably adopted to avoid filing suit in the wrong place.  Relying on the Supreme Court's opinion in *Jerman*, the consumer argued that the question of where the FDCPA provided that a suit could be filed required a legal interpretation, thereby precluding the law firm from asserting a bona fide error defense, even if the law firm had relied on what the state of the law was at the time.

The Seventh Circuit disagreed, explaining that the law firm had not "interpreted" the FDCPA's legal requirements, but simply relied on a previously binding interpretation by the court.  If there was any mistaken interpretation of the FDCPA, it was a mistaken interpretation by the Seventh Circuit, not the law firm.  And even if the error had resulted from a mistaken legal interpretation by the law firm, *Jerman* would not preclude the defense because the law firm's interpretation of the rule on where a suit could be filed would not have been a mistaken interpretation of the law ***at the time it was made***.

I find the Seventh Circuit's reasoning in *Oliva* persuasive.  As noted in my prior

Memorandum, there is an important distinction to be made between a debt collector's independent exercise of legal judgment that results in a misinterpretation of the FDCPA, and a debt collector's good-faith reliance on federal judicial interpretations of the FDCPA, even if those interpretations are later overturned.  This distinction is important for at least two (2) reasons.

First, if a debt collector relies on clear legal authority that is directly on point, whether that legal authority comes in the form of district court opinions or appellate court opinions, that debt collector is not exercising independent legal judgment to interpret the law; the debt collector is *relying on a court's interpretation of the law*.  *See Oliva*, 2016 WL 3262370, at *2 (applying the bona fide error defense because the debt collector "did not interpret the relevant venue provision of the FDCPA, mistakenly or otherwise, but simply abided by [the Seventh Circuit's] interpretation in *Newsom*," and that the debt collector's "decision to follow *Newsom* does not amount to an independent (and entirely futile) 'interpretation'").  Therefore, even if those court opinions are later overturned, deeming those judicial interpretations of the law to be incorrect, there has been no misinterpretation of the law by the debt collector, only by the courts.  For example, in *Oliva*, in applying the bona fide error defense, the Seventh Circuit explained that if the debt collector's "selection of venue under *Newsom* was the result of a mistaken interpretation of the FDCPA, it was the result of *our* mistaken interpretation, not [the debt collector's]."

Like in *Oliva*, here, Defendant had not "interpreted" the FDCPA's legal requirements regarding the Barcode, but simply relied on prior judicial opinions, including courts from within Pennsylvania, that had specifically approved of Defendant's practice at the time.  *See, e.g.*, *Waldron v. Prof'l Med. Mgmt.*, No. 12-1863, 2013 WL 978933, at *5 (E.D. Pa. Mar. 13, 2013) ("The embedded data is a seemingly random series of letters and numbers that only Defendant can decipher.  Its inclusion on the envelope's face thus does not violate the Act.'); *Douglass v. Convergent Outsourcing*, 963 F. Supp. 2d 440, 447 (E.D. Pa. 2013) ("Since exposure of this account number on

the envelope and through the QR code is benign, § 1692f(8) is not violated."); *see also Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011) (holding that the mere presence of an account number does not show that the communication is related to a debt collection).   Therefore, Defendant did not make any independent legal judgment as to whether the language of the FDCPA would permit the mailing of Defendant's collection notice to Plaintiff.   Rather, Defendant explicitly relied on every single judicial opinion that had addressed the issue, all of which permitted Defendant's mailing.   Defendant maintains, and Plaintiff does not dispute, that there was no judicial opinion holding otherwise.   It was not until four (4) months after mailing Plaintiff's collection notice, on August 27, 2014, that the Third Circuit Court issued its opinion in *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014)*,* overturning the previous opinions relied upon by Defendant.   Any FDCPA violation arising out of Defendant's mailing was not based on any misinterpretation of the FDCPA by Defendant, the debt collector, but by the courts noted above.   Accordingly, there was no misinterpretation of law by the debt collector, and *Jerman* does not apply.   To impose liability on debt collectors who, like Defendant here, researched and relied on federal court opinions interpreting the FDCPA before sending a collection notice, would have the practical effect of retroactively punishing debt collectors for following the law as it then stood.   *Daubert*, 2016 WL 3027826, at *7.

Second, even if one were to characterize a debt collector's reliance on judicial interpretations of the FDCPA that were later overturned as the ***debt collector's*** misinterpretation of the law, it would not be a misinterpretation because that was the state of the law at the time the decision was made.   *See Oliva*, 2016 WL 3262370, at *3 (explaining that "even if Blatt's violation was the result of its own interpretation of the law, *Jerman* still would not apply, for Blatt's interpretation was not mistaken when it was made").   For example, in *Oliva*, the Seventh Circuit explained that the fact that "Blatt's conduct would later be deemed a violation under *Suesz* is not the result of Blatt's mistaken interpretation of the FDCPA, but of a retroactive change of law that was

entirely outside Blatt's control." *Id.* Likewise, here, the fact that Defendant's conduct would later be deemed a violation by the Third Circuit in *Douglass*, which was decided four (4) months after Defendant mailed Plaintiff's collection notice, is not the result of Defendant's mistaken interpretation of the FDCPA, but of a "retroactive change of law that was entirely outside of [its] control." *Id.*

      This distinction between a debt collector's independent misinterpretation of the FDCPA and a debt collector's reliance on judicial interpretations of the FDCPA is consistent with the Supreme Court's holding in *Jerman*. *Jerman* did not hold that ***any*** misinterpretation of the FDCPA–regardless of who makes the mistake–precludes the bona fide error defense. Rather, the holding in *Jerman* applied only to a ***debt collector's*** misinterpretation of the FDCPA. *Jerman*, 559 U.S. at 577 (characterizing the sole issue to be resolved as "whether the 'bona fide error' defense in § 1692k(c) applies to a violation resulting from a ***debt collector's*** mistaken interpretation of the legal requirements of the FDCPA") (emphasis added); *id.* at 604-05 ("We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a ***debt collector's*** incorrect interpretation of the requirements of that statute.") (emphasis added); *see also Oliva*, 2016 WL 3262370, at *2 ("*Jerman* applies only when the debt collector's violation results from the ***debt collector's*** mistaken interpretation of the law."). To be sure, the Court's holding in *Jerman* was based on its concern with the potential abuse of the bona fide error defense if it applied to a debt collector's misinterpretation of the law because if that were the case, then the defense would make every FDCPA violation subject to the debt collector's purported interpretation of the statute. *Jerman*, 559 U.S. at 602-03. However, where like here, the interpretation of law comes from a federal court or a federal agency, it is not subject to the same potential abuse or manipulation and does not "invite[] litigation about a debt collector's subjective intent." *Id.*

      Finally, Plaintiff attempts to distinguish *Oliva* by arguing that *Oliva* relied on

11

"binding" legal authority in the form of a federal appellate court opinion, whereas here, Defendant relied on ***district court*** opinions, which Plaintiff appears to argue are non-binding.  (Doc. 62, at 3-4.)  Plaintiff argues that the bona fide error defense only covers mistakes of law when the debt collector relies on "binding" legal authority in the form of appellate court opinions, as opposed to district court opinions.  (*Id.* at 2-3 ("Defendant's argument ignores the long standing principle that there is no such thing as the law of the district. . . . The distinction between binding and non-binding authority here is of paramount importance.") (citation and internal quotation marks omitted).)  Because district court opinions are non-binding on other district courts, Plaintiff appears to adopt the view that debt collectors may ignore district court opinions construing the FDCPA's requirements and should instead exercise their own independent legal judgment as to what the language of the FDCPA requires.  (*Id.*)  According to Plaintiff, if a debt collector chooses to follow a district court opinion, they are exercising their independent legal judgment to do so; they are not bound to do so.  Based on this view, Plaintiff argues that Defendant could not in good faith rely on all of the uncontested district court opinions holding that its collection notice did not violate the FDCPA.  (*Id.*)

The only logical conclusion one can draw from Plaintiff's argument is that district court opinions can be freely disregarded and that unless there is a federal circuit court opinion (or presumably Supreme Court opinion) addressing whether a practice would violate the FDCPA, debt collectors should exercise their own independent legal judgment to decide whether an action would violate the FDCPA, ignoring any district court opinions addressing the issue since they are not binding.  I cannot agree that this is how the bona fide error doctrine was meant to be applied.  To be sure, Plaintiff's logic would equally apply to disregarding circuit court opinions.  For example, Plaintiff argues:

> Because every lower court ***must*** follow binding circuit precedent, the debt collector does not exercise any legal judgment when it also follows binding precedent. . . . But, when a debt collector follows a district court's decision, it must necessarily exercise its own legal judgment as to the correctness of that district court's decision, ***because at any time a different district court could reach an opposite holding***.

(Doc. 62, at 4.)  However, replace "lower court" with "circuit court," "circuit precedent" with "Supreme Court precedent," and "a different district court" with "the Supreme Court," and you get the following:

> Because every circuit court **must** follow binding Supreme Court precedent, the debt collector does not exercise any legal judgment when it also follows binding Supreme Court precedent. . . . But, when a debt collector follows a circuit court's decision, it must necessarily exercise its own legal judgment as to the correctness of that circuit court's decision, **because at any time the Supreme Court could reach an opposite holding**.

Following Plaintiff's logic, which relies on whether an opinion can be overruled by a higher court or not, a debt collector should ignore any opinion regarding the FDCPA's requirements and instead exercise their own legal judgment as to what the FDCPA requires, except in the rare cases where there is a Supreme Court opinion on point, since that is the only court that cannot be overruled.  Surely, this is not how the bona fide error defense was meant to operate.

Plaintiff's posed hypothetical at the end of his reply brief fails for similar reasons. Plaintiff suggests that it "may be useful" to consider a hypothetical scenario where a district court reaches a decision that is clearly at odds with the FDCPA, such as a district court holding that a debt collector is always free to communicate with third-parties, and where there are no contradictory district court opinions.  (Doc. 62, at 4-5.)  Since the hypothetical decision would directly contradict the plain language of the FDCPA, which generally prohibits a debt collector from communicating with third parties, 15 U.S.C. § 1692c(b), should the debt collector be comforted by the district court decision which it knows, or should know, ignores the plain language of the statute?  This is the question posed by Plaintiff in distinguishing *Oliva* on the basis that it involved "binding" precedent from a circuit court as opposed to the instant matter, which involves "non-binding" district court opinions.  Putting aside the irony of this distinction, since *Oliva* involved a debt collector's reliance on a Seventh Circuit Court opinion, which was then overturned by a later Seventh Circuit opinion, this same hypothetical question could be posed if a circuit court opinion affirmed that district court decision, yet there were no other contradictory

circuit court opinions holding otherwise.  Should the debt collector be comforted by the circuit court opinion which it knows, or should know, ignores the plain language of the statute?  Based on this posed hypothetical, I can only assume that Plaintiff is suggesting that unlike circuit court judges, district court judges cannot be trusted to properly interpret the law.  I cannot agree that this was what the Supreme Court intended with its opinion in *Jerman*.  Accordingly, and for all of the reasons outlined above, Defendant is entitled to proceed to trial on its bona fide error defense and Plaintiff's motion to reconsider my Order denying summary judgment on his FDCPA claim will be denied.

**B.**     **Defendant's Motion for Reconsideration (Doc. 53)**

On June 11, 2016, Defendant also filed a motion for reconsideration.  (Doc. 53.) Although this motion was untimely filed,[3] I will decline Plaintiff's invitation to deny Defendant's motion on this basis because considering the motion would not prejudice Plaintiff.  *See United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (holding "that a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment");  *Szostek v. Drexel Univ.*, No. 12-2921, 2013 WL 6667746, at *2 (E.D. Pa. Dec. 18, 2013) (waiving application of Local Rule 7.1 to consider the substance of a motion for reconsideration filed fourteen (14) days after the deadline).  Therefore, I will proceed to address the merits of Defendant's motion.

**1.**     **Prior Express Consent Defense**

First, Defendant argues that I erred in finding insufficient record evidence on Defendant's prior express consent defense to survive summary judgment on Plaintiff's

---

[3]     Local Rule 7.10 requires that a motion for reconsideration be filed within fourteen (14) days from the date of the order that the motion seeks reconsideration of. Here, Defendant challenges my May 27, 2016 Order, making the deadline for Defendant's motion fourteen (14) days after May 27, 2016, or June 10, 2016. Defendant did not file its motion until June 11, 2016.

TCPA claim. Prior express consent is an affirmative defense to TCPA claims where the calls were made with the "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A). Defendant argues that I required absolute proof of Plaintiff's consent, thereby "flipping" the summary judgment standard and placing the burden of proving its case on Defendant instead of Plaintiff. However, this misconstrues my Memorandum and ignores that "prior express consent" is an affirmative defense that Defendant ultimately bears the burden of proving. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Request of ACA Int'l for Clarification & Declaratory Ruling, 23 F.C.C.R. 559, 565 ¶ 10 (Jan. 4, 2008) ("2008 FCC Order") ("conclud[ing] that the creditor should be responsible for demonstrating that the consumer provided prior express consent" and that "[s]hould a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent"); *see also Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 366 (3d Cir. 2015) (explaining that the defendant bears the burden to prove entitlement to the prior express consent defense to a TCPA claim because it is an affirmative defense); *Stoops v. Wells Fargo Bank, N.A.*, No. 3:15-83, 2016 WL 3566266, at *4 (W.D. Pa. June 24, 2016) ("It is well settled that when a defendant invokes the affirmative defense of express consent, the defendant bears the burden of establishing that it applies."); *Sengenberger v. Credit Control Servs., Inc.*, No. 9-c-2796, 2010 WL 1791270, at *3 (N.D. Ill. May 5, 2010) ("The defendant bears the burden of proof with respect to 'prior express consent [for TCPA claims].'") (citations omitted). *Cf. United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 366 (1967) (explaining that "where one claims the benefits of an exception to the prohibition of a statute," that party carries the burden of proof). Contrary to Defendant's assertion, I did not place Plaintiff's burden of proving his TCPA claim on Defendant. Rather, after finding that Plaintiff satisfied his burden of establishing a prima facie case of his TCPA claim, which Defendant does not dispute, I found that there was insufficient evidence to establish a genuine issue of material fact as to whether Defendant was entitled to its

affirmative defense, which Defendant would bear the burden of proof for at trial. Because there was no genuine issue of material fact as to whether Plaintiff established his prima facie case and there was insufficient evidence for a reasonable juror to conclude that Defendant was entitled to an affirmative defense, summary judgment was entered in favor of Plaintiff.

There is no dispute that Plaintiff never directly provided express consent to Defendant.  Rather, Defendant argues that Plaintiff indirectly provided express consent by providing direct consent to either the Hospital or Radiology Associates, and that consent was then passed along to MBMS and Defendant.  In order for a reasonable juror to conclude that any express consent was adequately "passed along" so that Defendant could be entitled to this defense, there would have to be some evidence from which a reasonable juror could conclude that Plaintiff "had given express consent to someone at some point," such as Radiology Associates or the Hospital, who was then **authorized** to pass that consent along to Defendant.  *Daubert*, 2016 WL 3027826, at *17.  Other than Defendant's uncorroborated assertion repeatedly made in its pleadings that this "must have" been the case (*see, e.g.*, Doc. 33, Def. Resp. to PSUMF, ¶ 24), the record contains no such evidence.  *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that in opposing summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts") (citations omitted); *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (explaining that in order to defeat summary judgment, "[t]he non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way") (citation omitted).  As the moving party, Plaintiff satisfied his burden by pointing out the absence of any evidence to support this defense, and as explained by the Supreme Court, this was all that Plaintiff had to do with regard to an issue that Defendant, even as the non-moving party, bore the burden of proving:

16

> But we do not think the *Adickes* [*v. S.H. Kress & Co.*, 398 U.S. 144 (1970)] language quoted above should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof.  Instead, as we have explained, **the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case**.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (emphasis added).  The Court explicitly "disapprove[d] a line of cases allowing a party opposing summary judgment to resist a properly made motion by reference only to its pleadings." *Id.*[4]

After Plaintiff pointed out this absence of evidence to support Defendant's affirmative defense of prior express consent, it was then up to Defendant to respond and come forth with ***any*** evidence (not to be confused with ***direct*** evidence or absolute proof) it had to make a showing of this defense.  *Id.* at 322 (explaining that the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").  The Third Circuit has explained that in cases like these, "summary judgment is essentially 'put up or shut up' time for the non-moving party:  the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citations and internal quotation marks omitted).  Even as the moving party, it is not Plaintiff's burden to come forth with evidence affirmatively disproving Defendant's affirmative defense.  *Celotex Corp.*, 477

---

[4]     Defendant's focus on the fact that it did not move for summary judgment to argue that I "flipped" the summary judgment standard is misplaced, because as the Supreme Court noted in *Celotex*, "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Id.* at 326.  The Supreme Court explained that it "would surely defy common sense to hold that the District Court could have entered summary judgment *sua sponte* in favor of petitioner in the instant case, but that petitioner's filing of a motion requesting such a disposition precluded the District Court from ordering it."

U.S. at 325.  Where the nonmoving party fails to go beyond its pleadings and come forth with sufficient evidence on issues it bears the burden of proving at trial, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," making summary judgment appropriate.  *Celotex Corp.*, 477 U.S. at 322-23 (noting that the standard for granting summary judgment mirrors the standard for a directed verdict).

In applying this standard, courts have granted plaintiffs' motions for summary judgment on TCPA claims where defendants failed to adduce sufficient evidence in support of their affirmative defenses to proceed to trial.  For example, in *Hines v. CMRE Fin. Servs., Inc.*, No. 13-61616, 2014 WL 105224 (S.D. Fla. Jan. 10, 2014), the plaintiff sought treatment at a hospital in Florida and at the time of his admission, he provided his telephone number to the hospital.  Town & Country Emergency Physicians, LLC ("TCEP"), which contracted with the hospital to provide emergency services, saw to the plaintiff's medical needs.  TCEP billed the plaintiff for the services rendered, but when the plaintiff did not pay his bill, TCEP obtained the plaintiff's telephone number from the hospital and retained the defendant CMRE, a provider of debt-collection services, to collect upon the debt.  In the course of its debt-collection efforts, CMRE placed as many as one hundred fifty-three (153) automated calls to the plaintiff's telephone, which resulted in the plaintiff filing a TCPA claim against CMRE.

The plaintiff moved for summary judgment, and the defendant, like Defendant here, countered with the prior express consent defense, arguing that the plaintiff consented to receive the calls.  *Id.* at *4.  It was undisputed that the plaintiff never provided his telephone number to TCEP, the creditor behind the calls.  The court found that the defendant failed to adduce evidence on this defense, and therefore granted partial summary judgment in favor of the plaintiff as to liability on this claim:

> Because Plaintiff has provided evidence of an absence of consent to calls
> on behalf of TCEP, and because Defendant has failed to adduce evidence
> that would allow a reasonable factfinder to conclude that Plaintiff expressly

> consented to receive such calls, Defendant has failed to create an issue of fact with regard to prior express consent that could preclude summary judgment in Plaintiff's favor.

*Id.* at *4.  The court applied the same standard articulated by the Supreme Court in *Celotex* and the same standard applied in my prior Memorandum.  Here, Defendant "failed to adduce evidence that would allow a reasonable factfinder to conclude that Plaintiff expressly consented to receive such calls," and has therefore "failed to create an issue of fact with regard to prior express consent that could preclude summary judgment in Plaintiff's favor."  *Id.*

Defendant argues that I erred in requiring ***direct*** evidence that Plaintiff consented to receiving calls, and that I ignored circumstantial evidence showing that Plaintiff provided his phone number to the Hospital.  Defendant points to evidence showing that (1) Plaintiff received medical services from Radiology Associates as part of his treatment at the Hospital; (2) MBMS was forwarded Plaintiff's radiology report and phone number; (3) MBMS then forwarded Plaintiff's phone number to Defendant for collections; (4) neither MBMS nor Defendant conducts independent research to discover phone numbers; (5) MBMS received Plaintiff's phone number from either Radiology Associates or the Hospital; and (6) Plaintiff testified that he never gave his phone number to Radiology Associates.  Based on this evidence and nothing more, Defendant argues that it must be the case that Plaintiff gave his phone number to the Hospital, and therefore claims that there is a genuine issue of material fact as to whether Plaintiff provided express consent.

However, as stated in my Memorandum, express consent can indeed be passed along to a third party indirectly, but only "under certain circumstances," such as when the plaintiff expressly authorized that the consent could be passed along to a third party.  *Daubert*, 2016 WL 3027826, at *16.  Contrary to Defendant's assertions, the issue of whether Plaintiff provided express consent does not turn solely on whether he provided his telephone number to the Hospital, but also on whether in providing his telephone number, Plaintiff ***authorized*** the Hospital to transfer his information to a third party like

19

Defendant for billing purposes.  *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123-24 (11th Cir. 2014) ("Other FCC explications of the prior express consent exception also show that the appropriate analysis turns on whether the called party granted permission or authorization, not on whether the creditor received the number directly."); *id.* at 1125 ("Because Mais's wife ***specifically authorized that transfer of health information for billing purposes***, 'the wireless number was provided by the consumer to the creditor' in satisfaction of the prior express consent exception.") (emphasis added).  For example, in *Mais v. Gulf Coast Collection Bureau, Inc.*, a plaintiff's express consent was "passed along" to a third party when the plaintiff's wife, in providing the hospital with the plaintiff's phone number, signed release forms "***granting the Hospital permission to pass his health information to Florida United for billing***."  *Id.* at 1126 (emphasis added).  It is not enough to merely provide a hospital one's contact information to expressly consent to being called by any third party that the hospital then passes that number along to in connection with the hospital's services.  *See, e.g.*, *id.* at 1124 ("Thus, under the 2008 FCC Ruling a cell phone subscriber like Mais could provide his number to a creditor like Florida United–and grant prior express consent to receive autodialed or prerecorded calls–by ***affirmatively giving an intermediary*** like the Hospital ***permission to transfer the number*** to Florida United for use in billing."); *Hines*, 2014 WL 105224, at *2-*3 ("The Court agrees with Plaintiff that the mere provision of his telephone number to the Hospital upon admission does not constitute express consent to receive calls from a distinct creditor . . . Although Plaintiff provided his telephone number to the Hospital upon admission, Defendant has failed to illustrate how this act constituted 'prior express consent' to receive debt-collection calls on behalf of TCEP, a third-party creditor."); *Moise v. Credit Control Servs., Inc.*, 950 F. Supp. 2d 1251, 1253 (S.D. Fla. 2011) ("Nothing in either the TCPA or the FCC order indicates that consent to one creditor is consent to another creditor who has some relationship with the first creditor."); *id.* (rejecting the defendant's argument that if the plaintiff gave his cell phone number to his treating physician, that would constitute prior

express consent for the physician's third party collector to contact the plaintiff in connection with the services rendered).  In *Mais*, the Eleventh Circuit explicitly distinguished between a "patient filling out a form from a healthcare provider," who may expect to be contacted about his health and treatment, and a form that "explicitly states that the provided information will be used for payment and billing," whereby the patient could then expect **collection calls** as a retail consumer.  *Mais*, 768 F.3d at 1122.  However, here, even assuming a reasonable juror could conclude that Plaintiff provided his telephone number to the Hospital, there is simply no evidence anywhere in the record from which a reasonable juror could conclude that in providing his telephone number, Plaintiff **authorized** the Hospital to transmit his information to MBMS and Defendant for billing.

Perhaps in realization of this, Defendant now raises new evidence in its reply brief in further support of its motion for reconsideration, citing to the Hospital's Notice of Privacy Practices, which has never been disclosed in earlier pleadings.  This Notice states that a patient's "medical information may be used and disclosed so that the treatment and services received at the facility may be billed and payment may be collected from you, your insurance company and/or a third party."  (Doc. 63, at 6 n.3.)  Defendant uses this Notice to argue that there is a genuine issue of material fact as to whether Plaintiff provided express consent.  However, this is too little, too late.  I cannot consider this new evidence presented in Defendant's reply brief because Defendant has made no argument as to why this evidence was not raised earlier or why it was not previously available.[5]  The Third Circuit has made clear that "[w]here evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (explaining that the district court "appropriately did not consider the affidavit in its disposition of the motion for reconsideration" because the affidavit contained evidence that was available

---

[5]      Additionally, there is no evidence that Plaintiff signed this Notice.

prior to summary judgment); *see also Donegan v. Livingston*, 877 F. Supp. 2d 212, 215 (M.D. Pa. 2012), *aff'd*, 523 F. App'x 195 (3d Cir. 2013) (explaining that a motion for reconsideration "is not a vehicle to raise new arguments or present evidence that could have been raised prior to the entry of judgment") (citation and internal quotation marks omitted).  Therefore, I may not consider this evidence on Defendant's motion.

In sum, prior express consent is an affirmative defense that Defendant would bear the burden of proving at trial.  In moving for summary judgment, Plaintiff pointed to the absence of any evidence to support this defense.  In response, Defendant failed to adduce any evidence from which a reasonable juror could conclude that this consent was given.  Therefore, Plaintiff was entitled to summary judgment.  Defendant's eleventh hour attempt to now submit evidence in its reply brief in support of a motion for reconsideration is too late.  Accordingly, there is no evidence in the record from which a reasonable juror could conclude that Defendant is entitled to an affirmative defense to Plaintiff's TCPA claim and Defendant's motion to reconsider my ruling on this question will be denied.

### 2.    Sarver Affidavit

Defendant also argues that I should have considered the Sarver Affidavit in ruling on Plaintiff's motion for partial summary judgment, even where the affidavit directly contradicted Defendant's Rule 30(b)(6) testimony.  To provide some background, Plaintiff had sought to obtain binding testimony from Defendant on various topics during discovery, including Defendant's Dialer system.  Defendant designated Anita Schaar as its corporate designee, who, at the Rule 30(b)(6) deposition, testified that the Dialer had the capacity to place calls without human intervention.  In moving for partial summary judgment, Plaintiff used this testimony to argue that the Dialer constituted an automatic telephone dialing system under the TCPA.  In opposing summary judgment, Defendant attempted to disavow this testimony by submitting an affidavit by its Director of Collections, Charlene Sarver, which asserted that "[t]he Dialer is *not* capable of making phone calls without human intervention."  (Doc. 32-4, Def. Ex. 4 (emphasis added).)

The "sham affidavit doctrine" provides that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony." *Jiminez v. All Am. Rathskellar, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007). Here, Defendant submitted an affidavit in connection with its summary judgment papers, which directly contradicts testimony provided by its Rule 30(b)(6) deponent. As explained in my prior Memorandum, Defendant cannot rely on this contradictory affidavit under the sham affidavit doctrine unless it can be shown that the information was "not known or was inaccessible" at the time. *Daubert*, 2016 WL 3027826, at *12.

Additionally, Rule 30(b)(6) deponents have a duty of preparation that makes them uniquely different from Rule 30(b)(1) deponents, who generally do not have an obligation to prepare for a deposition. Defendant designated Ms. Schaar as its Rule 30(b)(6) designee. As such, Ms. Schaar had a duty to prepare to testify on behalf of Defendant regarding the topics listed by Plaintiff in the deposition notice, which included the Dialer system. This duty included an obligation to obtain all information known or reasonably accessible to Defendant. Thus, when Ms. Schaar testified to the lack of human involvement with regard to calls placed by the Dialer, she was providing binding testimony regarding the information known or reasonably accessible to Defendant. To allow Defendant to disavow this binding 30(b)(6) testimony with an affidavit filed later, in connection with summary judgment and after discovery has already closed, would encourage companies to send poorly prepared designees to testify, and then to file a contradictory affidavit during summary judgment to disavow any Rule 30(b)(6) testimony they were not pleased with. Companies could then cherry pick at trial which testimony or affidavits would best serve their interests on each particular claim. This is precisely what the sham affidavit doctrine was aimed at preventing.

In its motion for reconsideration, Defendant argues that my focus on Rule 30(b)(6) obligations and my ruling that a defendant cannot rely on a contradictory affidavit unless it can "prove that the information was not known or was inaccessible" is narrower and at odds with the Third Circuit's more "flexible" approach to the sham

affidavit doctrine.  In *Jiminez*, the Third Circuit discussed this flexible approach, and explained that "[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." 503 F.3d at 254; *see also Baer v. Chase*, 392 F.3d 609, 625 (3d Cir. 2004) ("When there is ***independent evidence*** in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit.") (emphasis added).

However, *Jiminez* did not address the unique obligations defendants have under Rule 30(b)(6) to provide binding testimony.  Additionally, even assuming *Jiminez* applied to Rule 30(b)(6) testimony, Defendant still fails to meet its standard because Defendant has offered no "independent evidence in the record" to bolster the conflicting Sarver Affidavit, as required by the Third Circuit in both *Jiminez* and *Baer*.  *Jiminez*, 503 F.3d at 254; *Baer*, 392 F.3d at 625.  The only "independent" evidence that Defendant points to is the Sarver Affidavit itself, which of course, is not independent evidence.  Accordingly, Defendant fails to demonstrate that the sham affidavit doctrine does not apply and its motion for reconsideration on this claim will be denied.

## IV. Conclusion

For the above stated reasons, both motions for reconsideration will be denied. An appropriate order follows.


July 20, 2016                                   /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                              United States District Judge