**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DAUBERT, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-CV-00718 |
| v. | (JUDGE CAPUTO) |
| NRA GROUP, LLC, | |
| Defendant. | |

## MEMORANDUM

Presently before me is Defendant's motion in limine to dismiss Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim for lack of Article III standing. (Doc. 67.) Because I find that Plaintiff has alleged facts to show that he has suffered a particularized and concrete injury sufficient to confer standing, Defendant's motion will be denied.

### I.  Background

On November 8, 2013, Plaintiff received medical services from Radiology Associates of Wyoming Valley ("Radiology Associates") as part of his treatment at the Wilkes-Barre General Hospital.  A few days later, Plaintiff's radiology report, was forwarded to Medical Billing and Management Services ("MBMS") for coding and billing purposes.  MBMS provides billing services to Radiology Associates and collects unpaid medical bills on their behalf.  After Plaintiff's health insurance company paid Twenty-One Dollars ($21.00) for services rendered to Plaintiff by Radiology Associates, MBMS billed Plaintiff for the remaining balance of Twenty-Five Dollars ($25.00) and subsequently sent a reminder statement to Plaintiff on January 11, 2014.

After Plaintiff failed to pay this outstanding balance, his account was transferred to Defendant NRA Group, LLC for collection purposes.  On April 9, 2014, Defendant's independent letter vendor, Renkim Corporation, mailed Plaintiff a collection letter, which included a barcode (the "Barcode") that was visible through a glassine window on the envelope.  If scanned, the Barcode would reveal Plaintiff's account number.  In addition to the Barcode, the collection letter also included Plaintiff's account number directly above Plaintiff's mailing address.  However, the parties dispute whether the account

number was ever visible through the glassine window of the envelope during the mailing process.

On May 27, 2016, I denied Plaintiff's motion for partial summary judgment as to liability relating to his FDCPA claim. (Docs. 46 & 47.) Although the Plaintiff had established his prima facie case of an FDCPA violation based on the disclosure of the Barcode on his collection envelope, there was a genuine issue of material fact as to whether Defendant was entitled to a bona fide error defense to this claim.

On June 23, 2016, I entered an Order scheduling this case to proceed to trial on August 15, 2016. (Doc. 57.) On July 19, 2016, Defendant filed the instant motion in limine to dismiss Plaintiff's FDCPA claim for lack of Article III standing based on the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016). On August 4, 2016, Plaintiff filed his opposition to Defendant's motion (Doc. 78) and on August 10, 2016, Defendant filed its Reply (Doc. 81). Defendant's motion is now ripe for disposition.

## II. Discussion

It is well-settled that in order to establish Article III standing, a plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, I am presented with the issue of whether Plaintiff has suffered an injury-in-fact. This first element was discussed at length in the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016).

In *Spokeo*, the plaintiff asserted claims against an online consumer reporting agency for various violations of the Fair Credit Reporting Act ("FCRA"). The defendant agency operated a website that allows users to search for information about other individuals. When the defendant was asked to generate a profile on the plaintiff, it released inaccurate information claiming that the plaintiff was married, had children, was in his fifties, was employed, was relatively affluent, and held a graduate degree. The defendant filed a motion to dismiss, arguing that the plaintiff lacked standing because he

failed to allege a concrete and particularized injury. The trial court granted the defendant's motion, but that decision was later overturned by the Ninth Circuit Court of Appeals. On appeal, the Supreme Court was tasked with addressing the narrow issue of whether the plaintiff's alleged violations of his statutory rights were sufficient to satisfy the injury-in-fact requirement of Article III.

In vacating the Ninth Circuit's opinion, the Supreme Court emphasized that injury-in-fact is a "constitutional requirement," and that it is "settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S.Ct. at 1547-48 (citations omitted). The Court emphasized that to establish an injury-in-fact, a plaintiff must show that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 1548. In other words, a plaintiff must show that the injury suffered was both concrete *and* particularized. For an injury to be concrete, the injury must be "de facto," meaning, it must "actually exist." *Id.* For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Id.* (citation and internal quotation marks omitted). The Court found that the Ninth Circuit's standing analysis only focused on whether the plaintiff's injuries were particularized, and did not sufficiently inquire into whether they were concrete. *Id.* The Court explained that establishing a violation of a federal statute that provides a private right of action is not necessarily a concrete harm sufficient to confer standing:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549 (citation omitted); *see also id.* at 1550 ("A violation of one of the FCRA's procedural requirements may result in no harm."); *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting

3

the right to sue to a plaintiff who would not otherwise have standing.").

For example, the Court explained that if a consumer reporting agency failed to provide the required notice to a user of the agency's consumer information, such as an incorrect zip code, an allegation of this violation alone may not be sufficient to allege standing because it is "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* at 1550.  The Court reiterated that in order for an injury to be concrete, it cannot be abstract–it must "actually exist." *Id.* at 1548.

However, the Supreme Court also explained that "concrete" is not necessarily synonymous with "tangible," and that intangible injuries can also be concrete injuries sufficient to confer standing. *Id.* at 1549. In determining whether an intangible harm is sufficiently concrete, the Court advised courts to look to "both history and the judgment of Congress." *Id.* With regard to history, the Court explained that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* With regard to the judgment of Congress, the Court explained that although "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and that under those circumstances, a plaintiff "need not allege any additional harm beyond the one Congress has identified." *Id.* "In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* In articulating these principles, the Court took "no position as to whether the Ninth Circuit's ultimate conclusion—that [the plaintiff] adequately alleged an injury in fact—was correct." *Id.* at 1550 (vacating the Ninth Circuit's opinion and remanding the case for proceedings consistent with its opinion).

4

With these principles in mind, I will proceed to Defendant's motion.  Here, Defendant argues that Plaintiff failed to allege a concrete injury sufficient to confer standing because he only alleges a violation of the FDCPA (Defendant's mailing of a collection letter displaying the Barcode and Plaintiff's account number), but fails to allege how this violation caused him any actual harm.  Defendant also maintains that there is no record evidence showing that Plaintiff's account number was visible through the window.

As a preliminary issue, Defendant is incorrect that there is no evidence showing that Plaintiff's account number was visible through the glassine window.  Not only has Plaintiff presented both the original envelope mailed to him as well as the collection letter that was contained inside, which displays his account number, there is also deposition testimony from Paul Deakin, the Vice President of Defendant's independent letter vender, Renkim Corporation, admitting that it is possible that the account number could have been disclosed through the glassine window of the envelope.  (Doc. 81, Ex. 1, at 34:16-34:25.)  Therefore, the issue presented is whether this disclosure, which violates the FDCPA, constitutes a concrete and particularized injury sufficient to confer standing.

Defendant relies on two post-*Spokeo* out-of-Circuit district court cases where the plaintiff lacked standing to sue based on mere procedural violations of a federal statute.  However, neither of these cases involved the FDCPA and neither of these cases are binding on this Court.  *See, e.g.*, *Jamison v. Bank of Am., N.A.*, No. 2:16-422, 2016 WL 3653456, at *3-*5 (E.D. Cal. July 6, 2016) (holding that the plaintiff lacked standing to sue for violations of the Truth in Lending Act where the mortgage payoff statements sent to plaintiff contained inaccurate information); *Gubala v. Time Warner Cable, Inc.*, No. 15-1078, 2016 WL 3390415, at *3-*5 (E.D. Wis. June 17, 2016) (holding that the plaintiff lacked standing to sue under the Cable Communications Privacy Act where he only alleged that the defendant failed to destroy the plaintiff's personally identifiable information after he terminated his cable service because the mere possibility that the plaintiff's information could be disclosed to third parties was insufficient to create a concrete injury).  Relying on these cases, Defendant argues that Plaintiff must "identify a

5

specific harm he suffered outside of the mere procedural violation of the FDCPA." (Doc. 67-1, at 10.)  Defendant maintains that Plaintiff failed to identify such a harm.

The Third Circuit has recently had the opportunity to interpret *Spokeo* in an opinion that sheds light on the issue presented here. In *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441, 2016 WL 3513782 (3d Cir. June 27, 2016), a class of children alleged that an online website improperly tracked their usage and disseminated this information to other entities in violation of several statutes, including the Video Privacy Protection Act, the Wiretap Act, and the Stored Communications Act.  The defendant argued that the class did not have standing because the class had not suffered an injury.  However, even with *Spokeo* in mind, the Third Circuit rejected this argument:

> None of [*Spokeo*'s] pronouncements calls into question whether the plaintiffs in this case have Article III standing.  The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior.  While perhaps "intangible," **the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information.**  Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," [*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015)] noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.

*Id.* at *7 (emphasis added).  Although the Third Circuit acknowledged the Supreme Court's pronouncement in *Spokeo* that a plaintiff cannot rely on a "bare procedural violation" to allege an injury-in-fact, the Third Circuit also acknowledged the Supreme court's additional observation that in *some* cases, "an injury-in-fact *may* exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."  *Id.* at *6 (emphasis added).  The Third Circuit followed the Supreme Court's instruction to look to "both history and the judgment of Congress" to see if the alleged injury was concrete. *Spokeo*, 136 S.Ct. at 1549; *Nickelodeon*, 2016 WL 3513782, at *7 ("Congress's judgment on such matters is also instructive and important, meaning that Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.").  The Third Circuit found that both history and the judgment of

Congress supported the conclusion that the alleged injury suffered by the class of plaintiffs–the unlawful disclosure of legally protected information–was a concrete injury sufficient to confer standing. *Id.* (citing *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015)).

Similarly, here, Plaintiff's injury is also the unlawful disclosure of legally protected information. This injury is "clearly particularized," as Plaintiff alleges that it was his personal identifying information that was disclosed. This injury is also concrete because as the Third Circuit explained in *Nickelodeon*, both history and the judgment of Congress demonstrate that the unlawful disclosure of legally protected information is a concrete harm that is sufficient to confer standing. *Nickelodeon*, 2016 WL 3513782, at *7; *see also Google*, 806 F.3d at 134 & n. 19 (citing *Doe v. Chao*, 540 U.S. 614, 641 (2004) (Ginsburg, J., dissenting) (explaining that standing was established based on allegations that a plaintiff's Social Security number was disclosed)). This is consistent with the Supreme Court's pronouncement in *Spokeo* that courts should look to both history and the judgment of Congress to determine whether an injury is sufficiently concrete. *Spokeo*, 136 S.Ct. at 1549. Therefore, based on the Supreme Court's opinion in *Spokeo* and the Third Circuit's opinion in *Nickelodeon*, I find that Plaintiff here has alleged a sufficiently concrete injury to confer standing.

Defendant attempts to distinguish *Nickelodeon* on the ground that in *Nickelodeon*, the plaintiffs' information was ***actually*** disclosed, whereas here, Defendant claims that there is no evidence that Plaintiff's information was actually disclosed. Specifically, Defendant argues that Plaintiff has no evidence that his account information was ever disclosed through the glassine window of the collection envelope. However, as explained above, Defendant is incorrect. Plaintiff has evidence of both the original envelope with the glassine window as well as the collection letter displaying Plaintiff's account number, as well as the testimony from Paul Deakin, the Vice President of Renkim Corporation,

7

Defendant's independent letter vendor.[1]  Therefore, Plaintiff has alleged facts sufficient to show that he has suffered a particularized and concrete injury–the disclosure of legally protected information.  Accordingly, Defendant's motion will be denied.

### III.  Conclusion

For the above stated reasons, Defendant's motion in limine to dismiss Plaintiff's FDCPA claim is denied.


August 11, 2016                                                         /s/ A. Richard Caputo
Date                                                                          A. Richard Caputo
                                                                                 United States District Judge

---

[1]  Defendant places great weight on the fact that Mr. Deakin's testimony does not conclusively prove that Plaintiff's account number was disclosed through the glassine window of the envelope, but merely states that it is ***possible***.  However, Plaintiff does not need conclusive proof that the information was disclosed.  He merely needs to allege facts that, if believed, would show that he suffered a concrete and particularized injury sufficient to confer standing.  And because Plaintiff has adduced sufficient evidence for a reasonable juror to conclude that his allegations are true, Plaintiff has standing to assert his FDCPA claims against Defendant and proceed to trial.